# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROGER FRANK KINCAID,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No. CIV-14-736-F** |
| ) | |
| **CARL BEAR, Warden,** ) | |
| ) | |
| **Respondent.** ) | |

## REPORT AND RECOMMENDATION

Roger Frank Kincaid (Petitioner), pro se, brought this action under 28 U.S.C. § 2254 for federal habeas relief from his state court conviction and sentence. Doc. 1.[1] He supported his petition with an affidavit, *id.* at 46-53, and a brief. Doc. 3. He has also requested an evidentiary hearing. Doc. 4. United States District Judge Stephen P. Friot referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).

---

[1] This report cites court documents by their electronic case filing designation and pagination; unless otherwise indicated, quotations are verbatim.

Respondent responded to the petition, Doc. 15, and submitted the state court records. Docs. 16, 17.[2] Petitioner replied. Doc. 22. Eight months later, Petitioner moved to supplement the record; two months thereafter he filed a second motion to supplement the record. Docs. 24, 25. Respondent opposed supplementation, and Petitioner replied. Docs. 26, 27. Petitioner has not submitted any additional papers since the undersigned advised the parties on March 2, 2016 that a Report and Recommendation would be entered "within the next several months," Doc. 28, and the matter now appears to be fully at issue.

After an exhaustive review of the state court records and the parties' submissions and arguments, the undersigned recommends the denial of the petition, the motions for supplementation, and the motion for an evidentiary hearing. Docs. 1, 4, 24, 25.

## I.     History and procedural background.

### A.     State court.

The State of Oklahoma charged Petitioner with one count of first-degree malice aforethought murder and one count of assault and battery with

---

[2]     This report uses these abbreviations for record citations:

   TR Vol. ___, at ___ (trial transcripts);
   OR Vol. ___, at ___ (original state district court record);
   PH TR at ___ (preliminary hearing transcript);
   MH TR 5/12/11, at ___ (May 12 motion hearing transcript); and
   MH TR 5/26/11, at ___ (May 26 motion hearing transcript).

a deadly weapon, a knife, alleging that in June 2007 Petitioner stabbed Terry Jobe—fatally—and Kenneth Ruff—non-fatally. OR Vol. I, at 49-51, 130.[3] Mr. Ruff testified at Petitioner's preliminary hearing in September 2007 but died of unrelated causes before trial; the State read Mr. Ruff's preliminary hearing testimony to the jury at trial. TR Vol. III, at 9-78.

The jury found Petitioner guilty on both counts. Doc. 1, at 1.[4] Petitioner appealed his convictions, and the Oklahoma Court of Criminal Appeals (OCCA) summarily affirmed his judgment and sentence and denied his request for an evidentiary hearing. Doc. 15, Ex. 6. Petitioner then unsuccessfully sought post-conviction relief and an evidentiary hearing in the trial court; the OCCA affirmed the trial court's decision denying relief. *Id.* Ex. 13.

### B.    Federal court.

In this Court, Petitioner claims he "is in custody in violation of the Constitution . . . of the United States," 28 U.S.C. § 2254(a), because:

(1)    the trial court erroneously excluded evidence to impeach Kenneth Ruff's credibility, Doc. 1, at 7-15;

---

[3]    The State filed its charges in the District Court of Oklahoma County, Case No. CF-2007-3563.

[4]    Based on the jury's recommendation, Petitioner is serving a sentence of life imprisonment for the murder and twenty years for the assault and battery with a deadly weapon after two prior felony convictions. Doc. 15, Ex. 6, at 1.

(2)   his trial counsel failed to offer evidence of Kenneth Ruff's mental state, *id.* at 7, 15-17;

(3)   the trial court erroneously admitted Terry Jobe's statement to Jobe's employer that Petitioner was "liable to kill him," *id.* at 18, 18-21;

(4)   the trial court erroneously admitted statements that Petitioner made to an agent of the State, a nurse, while in police custody and before receiving a *Miranda* warning, *id.* at 18, 21-25;

(5)   the trial court erroneously admitted photographs of Terry Jobe's body, *id.* at 26-28;

(6)   the trial court erroneously denied funding for an expert witness, *id.* at 28-32;

(7)   cumulative error affected his trial, *id.* at 32;

(8)   his appellate counsel failed to raise stronger issues on direct appeal, *id.* at 32-35; and

(9)   in several instances, his trial counsel's actions were unreasonable, unprofessional, incompetent, and ineffective.  *Id.* at 35-44.

## II.   Standard of review.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).  A petitioner is entitled to federal habeas relief only if that merits-based adjudication "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, 28 U.S.C. § 2254(d). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03. "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted).

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). Clearly established federal law consists of Supreme Court holdings where the facts are similar to the facts in the petitioner's case. *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *Id.* at 1018.

If clearly established federal law exists, the court then considers whether the state court decision was contrary to or an unreasonable

application of that clearly established federal law. *See Owens*, 792 F.3d at 1242. "A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted). So, to qualify for habeas relief on this prong, the petitioner must show "'there was no reasonable basis' for the state court's determination." *Id.* at 1242-43 (citation omitted). "In other words, 'so long as fairminded jurists could disagree on the correctness of the state court's

decision,' habeas relief is unavailable." *Id.* at 1243 (citation omitted); *see also Harrington*, 562 U.S. at 103 ("As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

This Court must "accept a state-court [factual] finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (citation omitted). This Court presumes the factual determination to be correct; a petitioner can only rebut this presumption with clear and convincing evidence. *See id.* at 2199-2200; *see also* 28 U.S.C. § 2254(e)(1).

## III. Analysis.

### A. Petitioner's Ground One: Evidence to impeach Kenneth Ruff.

#### 1. Background.

Petitioner's first claim centers on the trial court's exclusion of medical and police records proffered to impeach Kenneth Ruff.

### a.    Medical records.

As noted, the State claimed Petitioner murdered Terry Jobe and wounded Kenneth Ruff with a deadly weapon, a knife. Mr. Ruff testified—under both direct *and cross-examination*—at Petitioner's preliminary hearing on September 7, 2007. PH TR at 21-86. Mr. Ruff died of unrelated causes before Petitioner's trial began on June 6, 2011; the parties stipulated that Mr. Ruff was "unavailable." MH TR 5/12/11, at 110-11. So, the State read his preliminary hearing testimony to the jury at trial. TR Vol. III, at 9-78.

After the jury heard that evidence, Petitioner's trial counsel proffered "the medical records of Kenneth Ruff [who] was treated immediately after being taken to the hospital" on the night of the stabbings. *Id.* at 81. Counsel maintained Mr. Ruff's "character for truthfulness could be impeached by extrinsic evidence the same as if he had been here live testifying." *Id.* at 79. He argued that Mr. Ruff, "while being interviewed . . . by the nurses, . . . said that he had worked for Oliver North in the Iran Contra affair and was clearly delusional" and "was also involuntarily committed by a psyche eval saying that he was depressed." *Id.* at 82. Counsel submitted that "when they asked him when he was admitted . . . have you ever used illegal drugs, he denied illegal drug usage" and "that kind of statement would have been useful for

me to impeach him on his credibility because clearly he'd admitted to drug usage in his testimony at the preliminary hearing." *Id.*

Counsel subsequently made an offer of proof, citing two specific pages from the medical records. *Id.* Vol. IV, at 6. He stated the first page of the hospital "progress reports for Kenneth Ruff describes the past PTSD from the Iran Contra issues and Ollie North" "and show[] a delusional, mentally ill person." *Id.* He argued the second page "show[ed] a positive for urine benzodiazepine and also urine cocaine screen, both positive, which would further emphasize the fact that Mr. Kenneth Ruff was on cocaine that night, and the cocaine was still in his system when he was in the hospital." *Id.*

Counsel sought "to present those documents to the jury" and argued that had Mr. Ruff "denied these issues, I could have cross-examined him with extrinsic records, and since I don't have a witness to cross-examine who could deny those issues," "the jury is deprived of the opportunity to further judge Mr. Kenneth Ruff's credibility." *Id.* at 6-7.

The State objected and advised the court that it had produced those medical records to Petitioner's counsel two weeks before counsel's cross-examination of Kenneth Ruff at Petitioner's preliminary hearing. *Id.* at 7-9. The State also argued "that with regard to cocaine and pain pills and beer, Mr. Ruff freely admitted consumption of those . . . in his sworn preliminary

testimony, and the jury has heard that." *Id.* at 9. Consistent with the State's objection, the trial court determined "the documents themselves are hearsay, and they're not admissible into evidence" and "overrule[d] the request to present those documents to the jury in this case." *Id.* at 8, 9-10.

### b. Police records.

The State filed a motion in limine to exclude evidence regarding an October 2010 incident involving Mr. Ruff. OR Vol. II, at 256-57. At a pre-trial hearing, Petitioner's counsel explained that "right prior to his death, Mr. Ruff got a shotgun and was holding himself up in his home, shot his dog, had a hostage and had a situation where a swat team was called . . . ." MH TR 5/12/11, at 116. Counsel characterized Mr. Ruff's behavior as "bizarre" and argued "it would certainly bear upon his credibility." *Id.* The trial court sustained the motion in limine, finding that an incident that took place "[t]wo and a half years after [Petitioner's alleged criminal acts] has no relevance to this trial proceeding." *Id.* at 117.

### 2. Claimed error.

Petitioner captions his first ground for federal relief in this manner:

> The trial court violated Petitioner's right to present a complete defense by precluding the introduction of evidence showing that Kenneth Ruff was capable of suffering from delusions and/or hallucinations, & may have been suffering from them on the night of the homicide. In barring the  introduction of this evidence, the trial court violated Petitioner's 6th & 14th

Amendment rights under the U.S. Constitution, & Article II, §§ 7 & 20 of the Oklahoma State Constitution.

Doc. 1, at 7.[5] Petitioner raised the same claim with an essentially identical caption in his direct appeal to the OCCA. *See* Doc. 15, Ex. 1, at 13.

### 3. The OCCA's determination.

The OCCA concluded the trial court's exclusion of this evidence did not violate Petitioner's federal constitutional right to present a complete defense:

> In Proposition One, Appellant argues that the trial court erred in excluding certain impeachment evidence of the mental instability and drug use of a prosecution witness. The admission or exclusion of evidence over a timely objection is ordinarily discretionary and will not be reversed unless clearly erroneous or manifestly unreasonable. *Hancock v. State*, 2007 OK CR 9, 72, 155 P.3d 796, 813. We find that the trial court did not abuse its discretion or violate either Appellant's rights to confrontation, or to present a complete defense, in excluding this proposed evidence. 12 O.S.2011, § 2403; *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727, 164 L.Ed.2d 503 (2006) (finding trial courts may exclude evidence where its marginal relevance is outweighed by the danger of unfair prejudice, confusion of the issues, or potential to mislead the jury). Proposition One is denied.

*Id.* Ex. 6, at 1-2, 3.

---

[5]    In each of his grounds of error, Petitioner requests federal habeas relief for alleged violations of the Oklahoma constitution. Any such violation would not entitle Petitioner to federal habeas relief. *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)).

### 4. Evaluation of the claimed error.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the constitution guarantees criminal defendants a meaningful opportunity to present a complete defense" and "[t]his right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324 (citations omitted) (considering a state evidentiary rule governing the admissibility of third-party perpetrator evidence based on the strength of the state's evidence). The Supreme Court—as the OCCA concluded, Doc. 15, Ex 6, at 3—distinguishes such rules from "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326-27 ("Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.") (internal quotation marks omitted); *see also Dodd v. Trammell*, 753 F.3d 971, 985-86 (10th Cir. 2013) ("[T]he Supreme Court has never questioned the traditional reasons for excluding

evidence that may have some relevance" and further has "only rarely" held that such a right "was violated by the exclusion of defense evidence under a state rule of evidence.") (citations omitted). Citing to the pertinent Oklahoma rule of evidence,[6] the OCCA found the trial court did not violate Petitioner's federal rights by excluding evidence of Mr. Ruff's mental instability or his drug use. Doc. 15, Ex. 6, at 3.

Petitioner is entitled to federal habeas relief on this claim only if he satisfies his burden of showing that the OCCA's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). Despite his burden, Petitioner "makes no attempt to explain why or how the OCCA unreasonably applied or contradicted applicable Supreme Court authority." *Hernandez v. Parker*, 524 F. App'x 401, 405 (10th Cir. 2013). Instead, he reproduced the brief his appellate counsel filed on direct appeal to the OCCA—substituting "Petitioner" for "Appellant" and using various abbreviations, Doc. 1, at 7-15,

---

[6]     Oklahoma's rules of evidence provide that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [or] misleading the jury . . . ." Okla. Stat. tit. 12, § 2403.

and, as his only additions, repeated the OCCA's disposition of the claim of error, followed by a conclusory request for relief:

> Petitioner herein maintains and shows throughout the body of this instant proposition of error that he was denied both due process of law and confrontation, as well as compulsory process in order to present a complete defense.

> Furthermore, a thorough review of this Ground of Error will reveal that the Summary Opinion of the OCCA is both "contrary to" and "an unreasonable application of" clearly established U.S. Supreme Court precedent, thus warranting him to federal habeas relief as requested herein. It is so PRAYED.

*Id.* at 15.

The undersigned broadly reads "this Ground of Error," *id.*, in light of Petitioner's pro se status, but no court "can[] act as his advocate and create arguments for him." *Hernandez*, 524 F. App'x at 405. Nowhere does Petitioner challenge the OCCA's application of *Holmes* on the merits of his federal claim; apart from referencing *Holmes* by repeating the OCCA's finding, Petitioner does not mention the decision. Doc. 1, at 7-15. Instead, through the co-opted arguments from his direct appeal brief, Petitioner contends that *Davis v. Alaska*, 415 U.S. 308 (1974), is "useful" on the issue of whether "[d]enying the defendant the right to present admissible impeachment evidence is reversible error when the credibility of the witness being impeached is crucial to the State's case." Doc. 1, at 13. He claims "the Supreme Court held that Alaska could not bar a defendant from impeaching

a witness with otherwise admissible evidence that directly affected the witness's credibility," and argues that

> [i]n the case at bar the jurors were equally entitled to have the benefit of Mr. Kincaid's defense theory before them so that they could make an informed judgment as to the weight to give to Ruff's testimony, which constituted practically the State's entire case for Petitioner's guilt. The claim of Ruff's delusional state which the defense sought to develop was admissible to show that Ruff's testimony was not credible because he could not distinguish between the truth & his own delusions.
>
> "Whether rooted directly in the Due Process Clause of the 14th Amendment [citation omitted], or in the Compulsory Process or Confrontation Clauses of the 6th Amendment [citations omitted], the U.S. Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'. [citations omitted]." Crane V. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). Precluding Petitioner from presenting the impeachment evidence described above violated Petitioner's right to defend himself at trial, and necessitates reversal of his convictions.

*Id.* at 14.[7] Contrary to the sweeping holding Petitioner ascribes to *Davis*, the Supreme Court concluded that when probing for witness bias on cross-examination, a criminal defendant's confrontation rights transcend state

---

[7] According to Petitioner, "Ruff's testimony . . . constituted practically the State's entire case for Petitioner's guilt," so the jury was "entitled to have the benefit of Mr. Kincaid's defense theory before them so that they could make an informed judgment as to the weight to give to Ruff's testimony." Doc. 1, at 14. Respondent disputes this characterization of the strength of the State's case, Doc. 15, at 18, noting that a police officer who responded to the scene of the attacks told the jury that Petitioner, with "blood on his face, pants, [and] chest," "made a statement that he was sorry, but they were trying to kill me." TR Vol. III, at 95-96.

evidentiary rules designed to protect juvenile offenders.  415 U.S. at 319

("The State's policy interest in protecting the confidentiality of a juvenile

offender's record cannot require yielding of so vital a constitutional right as

the effective cross-examination for bias of an adverse witness.").

Then, in *Crane*, the Court considered a state court procedure that

automatically foreclosed testimony about the circumstances of a defendant's

confession once the trial court determined the confession was voluntary.  476

U.S. at 684-87.  The Court "ha[d] little trouble concluding on the facts of this

case that the blanket exclusion of the proffered testimony about the

circumstances of petitioner's confession deprived him of a fair trial."  *Id.* at

690.  But the Court also "acknowledge[d its] traditional reluctance to impose

constitutional constraints on ordinary evidentiary rulings by state trial

courts," *id.* at 689, and noted its recent decision reaffirming that "the

Constitution leaves to the judges who must make these decisions 'wide

latitude' to exclude evidence that is 'repetitive ..., only marginally relevant' or

poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"

*Id.* at 689-90 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Petitioner's reliance on *Davis* and *Crane* is inapt.  In this case, the trial

court did not apply a state law, rule, or procedure that mechanically

prevented Petitioner from developing witness bias or the circumstances of a

confession on cross-examination.[8]  The trial court made, and the OCCA upheld, an "ordinary evidentiary ruling[]" in excluding Petitioner's documentary impeachment evidence.  *Crane*, 476 U.S. at 689.

### 5.  Conclusion.

Petitioner is not entitled to federal habeas relief on his first ground of error.  The OCCA's determination—that no violation of Petitioner's right to present a complete defense resulted from the trial court's exclusion of evidence of Kenneth Ruff's mental state—was neither contrary to, nor an unreasonable application of, clearly established law as determined by the Supreme Court.[9]

---

[8]    *See White v. Woodall,* 134 S. Ct. 1697, 1706 (2014) (AEDPA "does not require state courts to extend [Supreme Court] precedent or license federal courts to treat the failure to do so as error.").

[9]    On direct appeal, Petitioner claimed in a supplemental pro se proposition of error that "[t]he introduction of Kenneth Ruff's preliminary hearing testimony . . . violated my Sixth Amendment right to confront witnesses presented against me at trial." Doc. 15, Ex. 3, at 2.  He relied in part on *Crawford v. Washington*, 541 U.S. 36 (2004), and argued that "[i]f the defendant is denied the opportunity for a meaningful cross-examination at the time the pretrial testimony is given or if new facts providing critical impeachment of the witness comes out between the time of the prior testimony and the defendants trial, the previous testimony should be excluded." Doc. 15, Ex. 3, at 4-5.  He maintained his attorney "was never able to confront Ruff" with evidence of the events occurring in October 2010 because Mr. Ruff's preliminary hearing testimony pre-dated those events. *Id.* at 8.  Citing *Crawford*, 541 U.S. at 68, the OCCA held there was no error and found that Petitioner "was afforded an opportunity to cross-examine the witness at preliminary hearing, and the jury had before it sufficient

### B. Petitioner's Ground Two:  trial counsel's failure to present evidence to impeach Kenneth Ruff.

#### 1. Claimed error.

Here, as he did before the OCCA on direct appeal,[10] Petitioner maintains he "received ineffective assistance of counsel in violation of the 6th & 14th Amendments of the U.S. Constitution and Article II, §§ 7 and 20 of the Oklahoma State Constitution owing to counsel's failure to present additional evidence regarding the  mental state of Kenneth Ruff." Doc. 1, at 7, 15-17.  To support his claims before the OCCA, Petitioner filed an Application for Evidentiary Hearing and asked the OCCA to admit the medical records and police reports discussed in Ground One as well as evidence regarding Mr. Ruff's purported prior felony convictions.[11]  And, as he did before the OCCA, Petitioner claims his trial counsel was ineffective in three instances.

---

information to evaluate the witness's credibility."  Doc. 15, Ex. 6, at 9. Petitioner did not present this claim for federal habeas review.  *See* Doc. 1.

[10]    The ineffective assistance of trial counsel claims Petitioner raised by application for state post-conviction relief are addressed in § III.G., *infra*.

[11]    *See* Doc. 15, Ex. 2.

### a.    Kenneth Ruff's hospital records.

Petitioner claims his trial counsel was ineffective by failing to proffer additional evidence contained in Kenneth Ruff's hospital records from the night of the assault and murder. *Id*. at 15-16.

As detailed in the evaluation of Ground One, *supra*, Petitioner's counsel made offers of proof to the trial court in an effort to present Mr. Ruff's hospital records to the jury. He argued the hospital records showed that Mr. Ruff, "while being interviewed . . . by the nurses, . . . said that he had worked for Oliver North in the Iran Contra affair and was clearly delusional" and "was also involuntarily committed by a psyche eval saying that he was depressed." TR Vol. III, at 82. He asserted that another record "show[ed] a positive for urine benzodiazepine and also urine cocaine screen, both positive, which would further emphasize the fact that Mr. Kenneth Ruff was on cocaine that night, and the cocaine was still in his system when he was in the hospital." *Id*. Vol. IV, at 6.

Petitioner's contention, both on direct appeal and here, is that "there was additional evidence . . . that was available to counsel that he did not bring to the trial court's attention" and he claims "[t]hese additional facts could have made a difference in the trial court's rulings on the admissibility of the evidence regarding these incidents, and, if admitted, this evidence

could have affected the subsequent outcome of the trial." Doc. 1, at 15. He notes "records indicating that Ruff had an extensive history of depression and PTSD and was suicidal." *Id.* at 16. He also points to a petition for involuntary commitment that would have "contradict[ed] the prosecutor's claim at trial that Ruff's commitment could have been voluntary because Ruff supposedly wanted help." *Id.*

### b. Kenneth Ruff's police records.

As detailed in connection with Ground One, *supra*, the State filed a pre-trial motion in limine to exclude police report evidence regarding an October 2010 incident involving Mr. Ruff. OR Vol. II, at 256-57. The trial court considered the motion at a pre-trial hearing where Petitioner's counsel explained that "right prior to his death, Mr. Ruff got a shotgun and was holding himself up in his home, shot his dog, had a hostage and had a situation where a swat team was called . . . ." MH TR 5/12/11, at 116. Counsel characterized Mr. Ruff's behavior as "bizarre" and argued "it would certainly bear upon his credibility." *Id.* The trial court sustained the motion in limine, finding that an incident which took place "[t]wo and a half years after [Petitioner's alleged criminal acts] has no relevance to this trial proceeding." *Id.* at 117.

Petitioner claims as he did before the OCCA that his counsel was ineffective because he failed to utilize certain police records showing that Mr. Ruff told the police he had shot hillbillies who tried to break into his house and that two of them had been making voodoo dolls and were trying to put a curse on him. Doc. 1, at 16.

### c.     Kenneth Ruff's felony conviction.

This claim focuses on Mr. Ruff's testimony at the preliminary hearing "that he was NOT a felon but had been placed on probation for something that was dropped." *Id.* As he did before the OCCA, Petitioner maintains that this testimony was inaccurate and that his trial counsel was constitutionally deficient by failing to impeach Mr. Ruff's testimony with "a certified copy of the district court record" showing that he was convicted of a felony in 1987 and given a two-year suspended sentence. *Id.* The document at issue shows that Mr. Ruff was convicted in October 1987 of Possession of a Controlled Dangerous Substance, Marijuana, After Former Conviction and received a two year suspended sentence. Doc. 15, Ex. 2, Ex. C, at 71-93.

### 2.     The OCCA's determination.

The OCCA denied Petitioner's claims of error and his application for an evidentiary hearing under its Rule 3.11:

> Proposition Two claims that defense counsel's failure to utilize available evidence in his offers of proof concerning the

proposed impeachment testimony in Proposition One, and failure to utilize impeachment evidence of the same witness's prior felony conviction, violated Appellant's right to counsel. We assess this claim according to the two-pronged test of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), requiring the Appellant to show both unreasonably deficient performance by counsel and prejudice to the outcome of the proceeding. Appellant has also filed an application pursuant to Rule 3.11, *Rules of the Court of Criminal Appeals,* 22 O.S.2011, Ch. 18, App., for an evidentiary hearing to supplement the record with the evidence counsel allegedly failed to utilize. . . .

We have considered Appellant's application for evidentiary hearing in connection with his claims, and find no relief is warranted. Appellant has not shown clear and convincing evidence of a strong possibility that counsel was ineffective in his failure to utilize available impeachment evidence, nor can Appellant show a reasonable probability that counsel's allegedly deficient utilization of evidence determined either the outcome of the trial court's evidentiary rulings, or the trial itself. *Goode v. State,* 2010 OK CR 10, 192, 236 P.3d 671, 687. Proposition Two, and the application for evidentiary hearing, are therefore denied.

*Id.* Ex. 6, at 3-4.

### 3.     Evaluation of the claimed error.

To demonstrate his entitlement to federal habeas relief, Petitioner once again reproduced his direct appeal brief as his habeas brief and tacked on a quotation from the OCCA's findings, followed by conclusory allegations, including these:

[A] thorough review of this Ground of Error will reveal that the OCCA's Summary Opinion is both "contrary to" and an "unreasonable application of" clearly established U.S. Supreme Court precedents. Said Summary Opinion is also "an

unreasonable application of the facts of the case. That due to these reasons, federal habeas corpus relief is warranted herein.

Doc. 1, at 17. He provides no rationale for the conclusions. *Id.*

The Supreme Court's decision in *Strickland* governs Petitioner's ineffective assistance of counsel claims. 466 U.S. 668. To prevail under *Strickland*, Petitioner must show (1) his counsel's performance was deficient and (2) he was prejudiced as a result. *Id.* at 687. The OCCA reviewed Petitioner's ineffective assistance of counsel claims on the merits so AEDPA deference applies. Furthermore, "[w]hen the claim at issue is one for ineffective assistance of counsel . . . AEDPA review is doubly deferential because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . ." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (internal quotation marks omitted). "In such circumstances, federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Id.* (internal quotation marks omitted).

The OCCA denied Petitioner's claims of ineffective assistance of trial counsel and his application for an evidentiary hearing based on its assessment of the record, its consideration of Petitioner's non-record

evidence,[12] and its application of the law clearly established by *Strickland* and consistent with that clearly established law. *See Goode v. State,* 236 P.3d 671, 687 (Okla. Crim. App. 2015). The OCCA specifically considered the same evidence Petitioner contends his trial counsel could and should have proffered "regarding the mental state of Kenneth Ruff," Doc. 1, at 15, in concluding that trial counsel's failure to proffer that particular evidence was not outcome determinative. There is nothing in the undersigned's review of the record and of the evidence at issue to suggest that the OCCA's findings were unreasonable, and Petitioner has not shown otherwise.

### 4. Conclusion.

Petitioner is not entitled to federal habeas relief on this ground of error. He fails to establish the OCCA's determination was contrary to, or an unreasonable application of, *Strickland*.

---

[12] "[A]s a matter of federal law, . . . any denial of a request for an evidentiary hearing on the issue of ineffective assistance of counsel filed pursuant to OCCA Rule 3.11 . . . operates as an adjudication on the merits of the *Strickland* claim and is therefore entitled to deference under § 2254(d)(1)." *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013).

**C.     Petitioner's Ground Three:     Testimony of Terry Jobe's employer.**

**1.     Claimed error.**

Petitioner captions his third ground for federal habeas relief as follows:

> The court committed reversible error by admitting the deceased's statement to his employer that Petitioner was liable to kill him, because this statement was taken out of context and was more prejudicial than probative.     The admission of this evidence violated Petitioner's rights under the 6th & 14th Amendments of the U.S. Constitution and Article II, §§ 7 & 20 of the OK State Constitution.

Doc. 1, at 18-19.

**2.     The OCCA's determination.**

Petitioner submitted this same claim—using the same caption—as his third proposition of error on direct appeal.     *See* Doc. 15, Ex. 6, at 2.     The OCCA summarily denied appellate relief:

> In Proposition Three, Appellant challenges the admission over his objection of an extrajudicial statement by the victim that Appellant was "liable to kill him."     We review only for abuse of the trial court's discretion.     *Hancock,* 2007 OK CR 9, ¶ 72, 155 P.3d at 813.     We have repeatedly held that extrajudicial statements by the victim indicating fear of the defendant are admissible in homicide prosecutions as evidence of the victim's state of mind or to prove a motive for the killing.     12 O.S.2011, § 2803(3); *Allen v. State,* 1984 OK CR 34, ¶ 5, 675 P.2d 456, 457; *Welch v. State,* 2000 OK CR 8, ¶ 28, 2 P.3d 318, 370.     The statement here was properly admitted.     Proposition Three is denied.

*Id.* at 5.

### 3. Evaluation of the claimed error.

### a. Anticipatory procedural default.

Respondent contends, "Petitioner's habeas claim, that the testimony did not meet the requirements of Okla. Stat. tit. 12, § 2803(3), merely alleges an error of state law." Doc. 15, at 26. He argues—correctly—that a "state law error claim is not cognizable in this habeas proceeding . . . ." *Id.*; *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). He contends that "[t]hough [Petitioner] claimed in his direct appeal brief proposition heading that admission of the evidence violated the Sixth and Fourteenth Amendments of the United States Constitution, this was insufficient to raise the due process claim to the Oklahoma state courts." Doc. 15, at 27. In Respondent's view, Petitioner failed to fairly raise his federal due process claim before the state courts and would be barred if he were to attempt to now do so. *Id.* at 27-28. Petitioner replied, citing *Picard v. Conner,* 404 U.S. 270, 275, 278 (1971) and the Tenth Circuit's unpublished decision in *Pena v. Hartley*, 576 F. App'x 749 (10th Cir. 2014). Doc. 22, at 21. He maintains he "fairly presented the substance" of this claim to Oklahoma's "Highest Court . . . ." *Id.*

Mr. Pena, like Petitioner, sought federal habeas relief on various claims, including claims of evidentiary error. Similarly, although he "labeled his claims on direct appeal as asserting a due process violation," he "failed to make arguments based on federal law or cite to any Supreme Court authority in his direct appeal brief; instead, he . . . relied only on [state] case law." *Pena*, 576 F. App'x at 751. The district court "concluded the label was insufficient for purposes of exhaustion" and dismissed those claims. *Id.*

The Tenth Circuit reversed the dismissal. *Id.* at 753. It noted that "federal law looks to the 'substance' of claims made on direct appeal; if any of the claims can be said to 'fairly present[ ],' expressly or by clear implication, a federal constitutional claim then exhaustion requirements have been satisfied as to those claims." *Id.* at 752 (quoting *Picard*, 404 U.S. 270, 275, 278 (1971)). "[T]he dispositive question" became whether Mr. Pena's evidentiary claims "state a federal constitutional claim or only a state law claim not cognizable under § 2254." *Id.* The court looked to the "focus" of Mr. Pena's claims and concluded "the 'substance' of [the c]laims is that the admitted evidence was so unduly prejudicial as to deny him a fair trial." *Id.* at 753.

Petitioner claimed before the OCCA, as he does here, that the admission of the statement by Mr. Jobe, the murder victim, to his employer

that Petitioner was liable to kill him, was more prejudicial than probative and "taken literally . . . was devastating, and given the close nature of the case undoubtedly contributed to the verdict." Doc. 1, at 21; Doc. 15, Ex. 1, at 40. These "allegations rather thinly state a federal due process claim." *Pena*, 576 F. App'x at 753. And, because this claim "w[as] adjudicated by the [OCCA], albeit in a somewhat summary fashion," the undersigned considers the claim under § 2254(d). *Id.* (citing *Harrington*, 562 U.S. at 100 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

### b.   Fundamental fairness.

On a denial of a due process claim, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes v. Gibson*, 210 F.3d 1284, 1298 (10th Cir. 2000). The evidence must have been "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson,* 283 F.3d 1203, 1212 (10th Cir.2002) (quotation and brackets omitted).

To support his fundamental unfairness claim, Petitioner cites two decisions, one from the Supreme Court. That case, *Lisbana v. California*, 314

U.S. 219, 236 (1941), addresses the admission of a coerced confession.[13] Petitioner does not explain how either decision supports a claim of constitutional error in his case. Nor does he substantiate his wholly conclusory opinion that the statement "undoubtedly contributed to the verdict" in light of "the close nature of the case . . . ."[14] Doc. 1, at 21.

### 4. Conclusion.

Petitioner is not entitled to federal habeas relief on this ground of error. He has not demonstrated that the OCCA's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

### D. Petitioner's Ground Four: his unwarned statements to Nurse Miller.

### 1. Background.

At a hearing outside the jury's presence, Rebecca Miller testified she was on duty as a registered nurse in the hospital emergency room where the

---

[13] In *Martin v. Kaiser*, 907 F.2d 931, 934-35 (10th Cir. 1990), the second decision, the Tenth Circuit found no error in the OCCA's determination that the trial court's admission of an enhanced tape recording between the defendant and a confidential informant was not an abuse of discretion. The court reiterated "that any errors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law." *Id.* at 934.

[14] As previously noted, *see supra* n.7, "the close nature of the case," Doc. 1, at 21, is subject to debate.

Oklahoma City Police Department took Petitioner for medical evaluation after the stabbings. TR Vol. II, at 106-08. She believed Petitioner to be in police custody. *Id.* at 108. An officer remained with Petitioner "the whole time he was in [her] ER . . . ." *Id.* at 116.

Nurse Miller testified she took Petitioner's medical history and while treating "several lacerations that need some medical attention," engaged in "small talk," as was her practice in "try[ing] to make the patient comfortable . . . ." *Id.* at 108, 109, 110. At no time "did any police officer ask [her] to put questions to [Petitioner] in an attempt to get statements from him . . . ." *Id.* at 109. During her conversation with Petitioner, it was not her intention to ask him questions "as a representative or a proxy for some police investigator . . . ." *Id.* at 110.

Nurse Miller testified at trial—as she had at the earlier hearing, *id.* at 114—that she asked Petitioner "how he received the cuts that he had." *Id.* Vol. III, at 254, 251-54. Petitioner said he had been stabbed. *Id.* at 254. She then asked him "how he had been stabbed, and he said that all I needed to do was to place the bandages, and that's all that [she] needed to know." *Id.*

In allowing Nurse Miller's testimony, the trial court concluded "there is no violation of Miranda," finding "the statement elicited from [Petitioner] was

not pursuant to any governmental action" and that "it was voluntarily made

. . . ." *Id*. Vol. II, at 122.

### 2. Claimed error.

Seeking federal habeas relief, Petitioner maintains

[t]he trial court committed reversible error by permitting the prosecution to introduce Petitioner's alleged remarks to Nurse Miller because these statements were obtained by an agent of the State in the absence of **Miranda** warnings and after Petitioner was in custody. The introduction of these statements violated Petitioner's constitutional rights under the 5th & 14th Amendments of the U. S. Constitution and Article II, § 7 of the OK State Constitution.

Doc. 1, at 18, 21.

### 3. The OCCA's determination.

The OCCA, reviewing for plain error, concluded the (identical) claim

lacked merit:

Appellant's Proposition Four claims that his custodial statements to a nurse who treated him at the hospital were admitted at trial in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Trial counsel failed to object on these grounds in the court below. Our review is therefore limited to whether admission of the evidence was plain error. *Simpson v. State,* 1994 OK CR 40, ¶ ¶ 2, 12, 876 P.2d 690, 692, 695. To show plain error, appellant must prove an actual error, i.e., deviation from a legal rule, that is plain or obvious, and that affected the outcome of the proceeding. *Murphy v. State,* 2012 OK CR 8, ¶ 18, 281 P.3d 1283, 1290. Contrary to Appellant's argument, unwarned custodial statements made to private citizens not connected to law enforcement are admissible if made freely and voluntarily. *Blanton v. State,* 2007 OK CR 37, ¶ 8, 172 P.3d 207 (*citing Wright v. State,* 2001 OK CR 19, ¶¶ 42-43, 30 P.3d 1148,

1158). Appellant's statements to the nurse were not obtained through interrogation by a law enforcement agent. *Id.* Appellant cannot show an actual error, therefore, no plain error occurred. Proposition Four is without merit.

Doc. 15, Ex. 6, at 5-6.

## 4. Evaluation of the claimed error.

Petitioner is not entitled to federal habeas relief on his claim of error unless he satisfies his burden of showing that the OCCA's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). Petitioner's attempt to meet that burden is by co-opting his direct appeal brief, adding, in conclusion, that "a thorough review of this Ground of Error will reveal that the Summary Opinion by the OCCA is both 'contrary to' and 'an unreasonable application of' clearly established U.S. Supreme Court precedent as cited herein, thus warranting federal habeas relief to be GRANTED herein. It is so PRAYED." Doc. 1, at 25.

Clearly established law holds that

the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been

taken into custody or otherwise deprived of his freedom of action
in any significant way.

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966)[15]; *see also Malloy v. Hogan*, 378

U.S. 1, 6 (1964) (holding "that the Fifth Amendment's exception from

compulsory self-incrimination is also protected by the Fourteenth

Amendment against abridgment by the States."). "[T]he *Miranda* safeguards

come into play whenever a person in custody is subjected to either express

questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S.

291, 300-01 (1980). "[T]he . . . 'functional equivalent' of interrogation . . .

includ[es] 'any words or actions on the part of the police (other than those

normally attendant to arrest and custody) that the police should know are

reasonably likely to elicit an incriminating response from the suspect.'"

*Arizona v. Mauro*, 481 U.S. 520, 526-27 (1987) (citation omitted).

In *Mauro,* the defendant, in custody at a police station, elected to

remain silent when advised of his rights under *Miranda*; his wife told police

she wanted to speak with him. *Id.* at 522. The police allowed them to speak

together in the presence of a police officer, while a tape recorder

---

[15]    The person must "be warned that he has a right to remain silent, that
any statement he does make may be used as evidence against him, and that
he has a right to the presence of an attorney, either retained or appointed."
*Miranda*, 383 U.S. at 444.

conspicuously recorded the conversation. *Id.* at 523. At trial, Mr. Mauro moved unsuccessfully to suppress the recording as "a product of police interrogation in violation of his *Miranda* rights." *Id.* The Supreme Court upheld the trial court's ruling, finding "no evidence that the officers sent Mrs. Mauro in to see her husband for the purpose of eliciting incriminating statements." *Id.* at 528. "Mauro was not subjected to compelling influences, psychological ploys, or direct questioning. Thus, his volunteered statements cannot properly be considered the result of police interrogation." *Id.* at 529.

Petitioner has not established that the OCCA's adjudication of his claim was contrary to or an unreasonable application of this established federal law. The police took him to a hospital emergency room for needed treatment. Nurse Miller, as she routinely did when treating her patients, engaged him in small talk in an effort to make him comfortable. No law enforcement officer asked her to do so. The police officer who was present did not question Petitioner. There is no indication of coercion or compulsion.[16]

Petitioner cites the Supreme Court's decision in *Estelle v. Smith*, 451 U.S. 454 (1981), and notes that the Court "extended the <u>Miranda</u> rule to

---

[16]    As noted, when Nurse Miller asked Petitioner "how he had been stabbed," Petitioner responded that "all [she] needed to do was to place the bandages, and that's all that [she] needed to know." TR Vol. III, at 254.

persons who were 'agents of the state." Doc. 1, at 23. In *Estelle*, evidence submitted by the prosecution at the defendant's trial was the product of a psychiatrist's ninety-minute court-ordered examination of the unwarned defendant in the county jail. 451 U.S. at 456-57, 467. But unlike Petitioner, the defendant "assuredly was faced with a phase of the adversary system and was not in the presence of a person acting solely in his interest." *Id.* at 467 (internal quotation marks and brackets omitted). And, in *Mathis v. United States*, another decision Petitioner cites, the evidence used in the defendant's trial included "documents and oral statements obtained from [defendant] by *a government agent* while [defendant] was in prison serving a state sentence." 391 U.S. 1, 2 (1968) (emphasis added).

### 5. Conclusion.

Petitioner is not entitled to federal habeas relief on this ground of error. He fails to show that the OCCA's adjudication of any issue raised "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).[17]

---

[17] "[U]nder [Tenth Circuit] precedents, . . . if a state court on plain error review denies relief on a federal claim by deciding there was no federal law error at all—the course the OCCA chose in this case—our standard AEDPA standards apply." *Eizember v. Trammell*, 803 F.3d 1129, 1163 (10th Cir. 2015) (citing *Douglas v. Workman,* 560 F.3d 1156, 1177-78 (10th Cir. 2009)).

**E.    Petitioner's Ground Five:    photographs of Terry Jobe's head and body.**

**1.    Claimed error.**

Petitioner claims here, as he did before the OCCA, that the trial court's admission of "gruesome" and "irrelevant but highly prejudicial photographs," Doc. 1, at 26, of Terry Jobe, the deceased victim, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 27.  He contends the photographs' admission "deprived [him] of a fair trial in violation of the 14th Amendment . . . ." *Id.* at 26.  He points to the trial court's admission—over defense objection—of four particular photographs. *Id.*[18]

---

[18]    The first is State's Exhibit 42, which Petitioner states is a "photograph of the top of the victim's head after the med examiner pulled back the scalp, revealing the pink flesh on top of the skull."  Doc. 1, at 26.  He claims "[t]his exhibit served no purpose" because "[t]he med examiner could have simply told the jury how deep the wound penetrated without showing the jury what the victim looked like after being scalped." *Id.*

The next photograph, State's Exhibit 46, allegedly "shows a gaping cut to the right side of the victim's neck & other puncture wounds in that area." *Id.*  The third, State's Exhibit 60, "depicts puncture wounds to the left side of the victim's neck & face." *Id.*

Petitioner describes the fourth photograph, State's Exhibit 50, as "a horrific display of 15 numbered sticks that the med examiner inserted into the wounds on the left side of the victim's neck & face to show the trajectory of each wound & to emphasize the number of wounds" and "to depict the differing patterns of the wounds suggesting the use of two knives or a double

## 2. The OCCA's determination.

The OCCA rejected Petitioner's claim of error on direct appeal:

> In Proposition Five, Appellant challenges the trial court's admission of photographs as reversible error. He preserved objections to four photographs at trial as unfairly prejudicial, and now challenges the admission of these photographs specifically, and other photographs generally, on appeal. The decision to admit photographs of a homicide victim is case-specific and discretionary. *Webster v. State,* 2011 OK CR 14, 76, 252 P.3d 259, 280. To the extent that he failed to object at trial, we review the remaining photographs only for plain error. *Simpson,* 1994 OK CR 40, ¶ 2, 876 P.2d at 692. The "test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether probative value is substantially outweighed by the danger of unfair prejudice." *Lockett v. State,* 2002 OK CR 30, ¶ 19, 53 P.3d 418, 425. With respect to those photographs to which Appellant objected at trial, we find the objections were properly overruled. As to the remaining photographs, there is no error, and therefore, no plain error. Proposition Five is denied.

Doc. 15, Ex. 6, at 6-7.

## 3. Evaluation of the claimed error.

The OCCA specifically considered whether the probative value of each of the four photographs was substantially outweighed by a danger of unfair prejudice and determined that the trial court properly admitted all four photographs. *Id.* at 6. "Due process arguments relating to the admissibility of the victims' autopsy photos will not support habeas relief absent

edge weapon." *Id.* He contends "there was no explanation as to why State's ex. 60, a photograph of the same area without the sticks, could not have been used for this purpose," an argument at odds with claim that the admission of State's Exhibit 60 deprived him of a fair trial. *Id.*

fundamental unfairness so as to constitute a denial of due process of law."

*Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (internal quotation marks, brackets, and ellipses omitted); *see also Revilla*, 283 F.3d at 1212 ("The evidence must have been so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.") (internal quotations marks and brackets omitted). Under the facts and circumstances of this case, the photographs were not unduly prejudicial. They corroborated the medical examiner's testimony, depicted the force necessary to inflict the resulting damage, showed not only the number of wounds, but also their trajectory and depth. "Given the probative nature of the photographs, the gruesome character of the crime itself . . . the admission of the photographs was not so unduly prejudicial as to render the proceedings against petitioner fundamentally unfair." *Smallwood,* 191 F.3d at 1275.

### 4.    Conclusion.

Petitioner is not entitled to federal habeas relief on this ground of error. He has failed to show that the OCCA's adjudication of any issue raised "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).

**F. Petitioner's Ground Six: denial of expert witness funding.**

**1. Claimed error.**

Petitioner maintains

[t]he trial court committed error in denying any funding for Petitioner's expert witness who was prepared to offer evidence concerning Petitioner's mental state on the night of the homicide, & accordingly denied Petitioner's constitutional rights under the 14th Amendment of the U.S. Constitution and Article II, § 7 of the OK state constitution.

Doc. 1, at 28.

**2. The OCCA's determination.**

The OCCA resolved this same claim on Petitioner's direct appeal:

Appellant complains in Proposition Six that the trial court denied his request for a necessary expert witness in violation of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed2d 53 (1985). When a defendant demonstrates to the trial judge that his physical or psychological condition is likely to be a significant factor in his defense, the State must assure the defendant access to a competent expert who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. *Fitzgerald v. State,* 1998 OK CR 68, ¶ 20, 972 P.2d 1157, 1166. The trial court here declined to provide *additional* funds so that a privately retained defense expert could testify at a *Daubert* hearing requested by the State. The trial court did not refuse funding for a defense expert *per se;* but rather concluded, based on the defense expert's report and the reports and testimony of a psychologist and psychiatrist presented by the State, that the defense expert's conclusions were beyond his qualifications.

We find that the trial court's ruling was within the realm of reasonable discretion and did not deny Appellant due process. *Ake* does not invariably grant the criminal defendant a right to

"choose a psychiatrist of his personal liking or to receive funds to hire his own." *Id.*, 470 U.S. at 83, 105 S.Ct. at 1096. Even if the trial court's denial of further expert assistance violated *Ake,* the violation is harmless beyond a reasonable doubt. The defense expert's opinion – that Appellant was sleepwalking at the time of the crimes – was contradicted by substantially all of the remaining evidence, including the defendant's own statements to police. Appellant has not shown that sleepwalking was likely to be a "significant factor" in his defense, and the denial of funding for this particular expert was, at most, harmless error. *Walker v. Attorney General,* 167 F.3d 1339, 1348 (10th Cir. 1999) *(Ake* errors are subject to harmless-error analysis); *Marquez-Burrola v. State,* 2007 OK CR 14, 157 P.3d 749. Proposition Six requires no relief.

Doc. 15, Ex. 6, at 7-8 (footnotes omitted).

### 3.    Evaluation of the claimed error.

To support his entitlement to habeas relief on the ground that the trial court denied his request for expert witness funding in violation of *Ake*, Petitioner, once again, replicated his direct appeal brief, *see* Doc. 1, at 28-31; Doc. 15, Ex. 1, at 51-57, before adding the following:

Petitioner herein maintains & shows throughout the body of this instant ground of error that the denial of an expert witness has denied him a fundamentally fair trial & an adequate/fair opportunity to present a defense to the charges had against him. This unjustifiable & arbitrary denial of an expert witness violated Petitioner's rights under the 6th & 14th Amendments to the U.S. Constitution, thus mandating reversal & remand for a new trial.

Furthermore, a thorough review of this Ground of Error will reveal that the OCCA's Summary Opinion is both "contrary to" and "an unreasonable application of" clearly established U.S. Supreme Court precedents as cited herein, as well as being "an

unreasonable application of the facts" of the case, thus warranting federal habeas relief to be GRANTED herein. It is so PRAYED.

Doc. 1, at 31-32.

Petitioner is entitled to federal habeas relief on his claim only if he satisfies his burden of showing that the OCCA's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). As explicated by the Tenth Circuit and as applicable here, the following is the law clearly established by the Supreme Court's decision in *Ake*:

> In *Ake,* the Supreme Court held that "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." 470 U.S. at 76, 105 S.Ct. 1087. Without going so far as holding "that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," the Court explained that indigent defendants must have "access to the raw materials," or "basic tools," "integral to the building of an effective defense." *Id.* at 77, 105 S.Ct. 1087. Armed with this basic principle, the Court then turned its focus to the question of "whether, and under what conditions, the participation of a psychiatrist is important enough to preparation of a defense to require the State to provide an indigent defendant with access to competent psychiatric assistance in preparing the defense." *Id.* The Court concluded that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate

41

examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83, 105 S. Ct. 1087.

*Alverson v. Workman*, 595 F.3d 1142, 1154 (10th Cir. 2010).

To meet his burden under 28 U.S.C. § 2254(d)(1), Petitioner cites two Supreme Court decisions, *Ake* and *Daubert*,[19] but, once again, "makes no attempt to explain why or how the OCCA unreasonably applied or contradicted [either] Supreme Court authority." *Hernandez*, 524 F. App'x at 405. And, once again, no court "can[] act as his advocate and create arguments for him." *Id.*

The OCCA first acknowledged Petitioner's contention "that the trial court denied his request for a necessary expert witness in violation of *Ake*," and, citing state authority, recognized that "[w]hen a defendant demonstrates to the trial judge that his physical or psychological condition is likely to be a significant factor in his defense, the State must assure the defendant access to a competent expert who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Doc. 15, Ex. 6, at 7.

According to Petitioner's supporting facts, his family had retained and paid for a defense expert, Dr. Gaughan, who then came to Oklahoma to

---

[19]     Petitioner claims only an *Ake* violation.

examine and evaluate Petitioner. Doc. 1, at 28. Dr. Gaughan had concluded "that at the time of the homicide in question, Petitioner was suffering from an REM sleep Behavior Disorder (RBD), and was possibly not fully conscious at the time of the events in question. (O.R. II, 304-305)." *Id.* [20] The State moved in limine to exclude Dr. Gaughan's testimony and "alternatively sought a <u>Daubert</u> hearing on the issue of the scientific reliability of his testimony. (O.R. II, 254-55, 258-61)." *Id.* The hearing was set for May 12, 2011. *Id.* Prior to that hearing, Petitioner "filed a Motion for Funds to Pay Expert Witness" because "by that time Petitioner's family, who had already paid [the expert] several thousand dollars, were unable to pay him any more." (O.R. II, 304-305). *Id.* The trial court held the *Daubert* hearing as scheduled; it was agreed that Dr. Gaughan would be allowed to testify several weeks later by videoconference. *Id.* at 29-30. "However, on that date trial counsel informed the court that Gaughan would not testify unless paid for his testimony." *Id.* at 30. Based upon the evidence presented at the *Daubert* hearing, the trial court found "that Dr. Gaughan's conclusions are not reliable in this case, and there has not been a showing that Dr. Gaughan is an expert in pharmacology and its effect on the body and behaviors to have come to the conclusion he did in his report." MH TR 5/26/11, at 37-38. "[O]n that basis,

---

[20]    Petitioner does argue that his sanity at the time of the offenses was raised before the trial court.

the Court denie[d Petitioner's] request to pay expert fees to Dr. D.J. Gaughan, Ph.D." *Id.* at 38.

The OCAA applied the correct law by considering whether, based on these facts, the trial court's ruling denied Petitioner due process under *Ake*. The OCCA concluded the trial court did not violate *Ake* because it did not actually deny funding for a defense expert. Instead, the trial court declined to provide additional funds to Petitioner's privately-retained defense expert after taking evidence at a *Daubert* hearing, and finding that the defense expert was not qualified to render his reported conclusions. As the OCCA determined, "*Ake* does not invariably grant the criminal defendant a right 'to choose a psychiatrist of his personal liking or to receive funds to hire his own.' *Id.*, 470 U.S. at 83, 105 S.Ct. at 1096." Doc. 15, Ex. 6, at 7-8.

### 4.    Conclusion.

Petitioner is not entitled to federal habeas relief on this ground of error. He failed to meet his burden of showing that the OCCA's determination was in conflict with, or an unreasonable application of, *Ake* (or any other clearly established federal law).

### G. Petitioner's Grounds Eight and Nine: ineffective assistance of appellate and trial counsel.

In his eighth ground for federal relief, Doc. 1, at 32-35, Petitioner maintains his appellate counsel was ineffective in failing to raise certain ineffective assistance of trial counsel claims on direct appeal; in Ground Nine, he sets out the five instances where he claims his trial counsel provided ineffective assistance. *Id.* at 35-42.[21]  He argues the five "constitutional claims of error raised in this federal habeas petition are much 'stronger' than those raised [by appellate counsel] & denied on direct appeal." *Id.* at 34.

### 1. Post-conviction history.

Petitioner sought state post-conviction relief and an evidentiary hearing on ineffective assistance of counsel claims.  Doc. 15, Exs. 7, 8.  The state district court found Petitioner's ineffective assistance of trial counsel claims were barred by res judicata and "meritless as to a claim of ineffective assistance of appellate counsel." *Id.* Ex. 10, at 5, 6.  The court applied *Strickland* and determined that because Petitioner's claims were meritless, there was "no probability that raising any of these issues on direct appeal would have caused a different result in the petitioner's appeal." *Id.* at 8.  The court concluded, "Appellate counsel's performance in the direct appeal in F-

---

[21]    Respondent does not assert a procedural bar regarding Petitioner's Ground Nine ineffective assistance of trial counsel claims.  *See* Doc. 15, at 50-69.

2011-681 was not deficient in not raising these meritless issues, and petitioner was not prejudiced by appellate counsel not raising these meritless issues." *Id.* On post-conviction appeal, the OCCA declined to review two of Petitioner's five claims on procedural grounds, *id.* Ex. 13, at 4-5, and otherwise affirmed the trial court's order denying relief, finding Petitioner failed to show either error in the trial court's findings or "a reasonable likelihood that the results of his appeal would have been different had his appellate counsel raised the claims made in his post-conviction application . . . ." *Id.* at 7-8.

Respondent contends the OCCA's denial of Petitioner's Claims One, Four, and Five was not contrary to, or an unreasonable application of, clearly established federal law and argues Claims Two and Three are procedurally barred. Doc. 15, at 50-69. As detailed below, the undersigned agrees the OCCA reasonably denied Petitioner's Claims One, Four, and Five and further agrees Claim Three is procedurally barred. The OCCA, however, misread Petitioner's Claim Two, and the undersigned has analyzed that claim de novo, concluding it lacks merit.

### 2. The OCCA reasonably applied *Strickland* in denying Petitioner's Claims One, Four, and Five on the merits.

Again, *Strickland* governs Petitioner's ineffective assistance of trial counsel claims. Petitioner must show (1) his counsel's performance was deficient and (2) he was prejudiced as a result. 466 U.S. at 668. AEDPA deference applies and the "review is doubly deferential . . . because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . ." *Woods*, 136 S. Ct. at 1151 (internal citation omitted).

Likewise, "[t]he proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in *Strickland* . . . ." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). "[P]etitioner must show both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding – in this case the appeal – would have been different." *Id.* "[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, [a court] look[s] to the merits of the omitted issue . . . .; of course, if the issue is meritless, its omission will not constitute deficient performance." *Id.* (citations and

internal quotation marks omitted). Absent a "reasonable probability" that the omitted claim would have resulted in relief, there is no ineffective assistance of appellate counsel. *Neill v. Gibson*, 278 F.3d 1044, 1057 & n.5 (10th Cir. 2001).

### a. Claim One—DNA testing of Petitioner's sock.
Doc. 1, at 35-36.

Petitioner argues "trial counsel mislead petitioner into believing that DNA evidence existed as to a 'sock' Petitioner had been wearing on the night in question & that counsel would present this evidence to the jury" but "<u>NO</u> DNA testing was ever done on said 'sock' nor did counsel ever introduce it at Petitioner's trial." *Id.* at 35. He claims DNA testing would have established that only his blood was on the sock and the sock would have established he "was <u>NOT</u> the perpetrator" because the footprints around the deceased victim were larger than the size of his footprints. *Id.* at 35-36.

On Petitioner's application for post-conviction relief, the state district court applied *Strickland* and found this was an issue of strategy for trial counsel and "meritless as to a claim of ineffective assistance of appellate counsel." Doc. 15, Ex. 10, at 6. The OCCA affirmed the trial court's decision, finding the State had "demonstrated that defense counsel had utilized the lack of any of the deceased's blood to his advantage, and that testing the sock might have revealed blood from one of the victims and removed that

48

advantage." *Id*. Ex. 13, at 3.[22]  In response to Petitioner's argument that he had not "agreed to said trial strategy, which is required by Henry V. Mississippi . . . 379 U.S. 443 (1965) & *Strickland*," *id*. Ex. 12, at 10, the OCCA found Petitioner's "cited authorities do not stand for a blanket rule that a defendant must specifically express agreement with trial counsel's chosen strategy before counsel's representation can ever constitute effective assistance." *Id*. Ex. 13, at 3.  Citing *Strickland*, the OCCA found "[i]nstead, the proper performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 3-4.

In this Court, Petitioner simply submits, without more, that the "Order of the OCCA is both 'objectively unreasonable' and an 'unreasonable application of' the facts . . . ."  Doc. 1, at 36.  He does not challenge the OCCA's legal rationale or its specific findings regarding the efficacy of his trial counsel's strategy; he only concludes counsel's strategy was "NOT 'sound' or professional . . . ."  *Id.*  Petitioner's claim that his trial counsel rendered ineffective assistance by failing to test Petitioner's sock for DNA evidence lacks merit.  "If the omitted issue is without merit, appellate counsel's failure to raise it is not ineffective assistance of counsel." *Kidwell v.*

---

[22]     As Respondent submits, "[b]y electing to argue the lack of physical evidence and criticizing the quality of the police investigation, the Petitioner's trial counsel avoided the risk of a positive DNA result while still floating the possibility of reasonable doubt."  Doc. 15, at 61.

*Martin*, 480 F. App'x 929, 933 (10th Cir. 2012). Petitioner fails to establish the OCCA unreasonably applied clearly established law as determined by the Supreme Court.

### b. Claim Four—refusal to allow Petitioner to testify. Doc. 1, at 39-41.

Petitioner claims he informed trial counsel several times that he wanted "to testify on his own behalf in order to let the jury know that he himself had been stabbed & attacked on the night in question [and t]hat he was completely INNOCENT of the crime of 1ˢᵗ degree murder." *Id*. at 39. He lists thirty-one matters he would have testified to and claims his trial counsel refused to allow him to testify. *Id*. at 39-40. Petitioner raised this same claim when requesting post-conviction relief from the state district court. Doc. 15, Ex. 7, at 9-10. The court determined "the petitioner made an informed, free, and voluntary decision not to testify" and found the claim "meritless as to a claim of ineffective assistance of appellate counsel." *Id*. Ex. 10, at 6.

On Petitioner's post-conviction appeal, the OCCA found the State had responded to Petitioner's claim with excerpts from the trial transcripts and

> [a]ccording to that transcript, after the State announced it was resting its case and after defense counsel's demurrer to the evidence was overruled, Petitioner's counsel advised the trial court that Petitioner would not be testifying and that the defense was resting its case as well. (O.R. 216-18.) Judge Jones then

made an on-the-record inquiry of Petitioner to have him confirm that he had been fully advised of his right to testify at his trial and that he was freely and voluntarily electing not to do so. (O.R. 219-20.) Based on this, the District Court concluded "petitioner made an informed, free, and voluntary decision not to testify" and that this ineffective assistance claim was meritless. (O.R. 233.)

Petitioner argues this finding was error, as he was told by his counsel "that he could change his mind as to this statement at any time during his trial" and "that this was all part of the procedure by the court but that he *would* be allowed to testify later in his defense." (Br. of Pet'r 14.) Nowhere in Petitioner's Application, did Petitioner bother to mention his open-court statement to Judge Jones, as recounted above, affirming that he was electing not to testify. Only now on appeal does Petitioner choose to acknowledge that act. Moreover, his allegation that he believed he later would be allowed to testify in his defense is belied by the fact that he confirmed before Judge Jones that he was not going to testify after counsel had said the defense was resting and thus the evidentiary portion of the trial had ended. Again, the District Court's conclusion on this claim finds full support in the record, and Petitioner has not shown error in the District Court denying this claim.

*Id.* Ex. 13, at 6-7.

In this Court, Petitioner claims that if the state district court had conducted an evidentiary hearing on this issue, he "would have been able to show that his counsel had lied to him & deceived him as to his future ability to change his mind as to said statement to the court about not testifying at that time." Doc. 1, at 40. He contends, "Petitioner was never given the opportunity to change his mind & then testify as to his innocence to the jury

. . . ." *Id.* He alleges the state courts unreasonably applied established Supreme Court precedent. *Id.* at 41.

"At this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). On this issue, the record shows that after the State rested, defense counsel told the court Petitioner would not testify and the defense was resting its case. TR Vol. IV, at 147. The State then requested an examination of Petitioner on the waiver of his right to testify. *Id.* at 148-49. Petitioner responded to the Court's questioning as follows:

> THE COURT: Come up Mr. Kincaid.
>
> (At bench:)
>
> Mr. Kincaid, Mr. Rowan advised me that you have chosen not to testify in this case; is that correct?
>
> THE DEFENDANT: Yes, Your Honor. I believe that's right.
>
> THE COURT: And did Mr. Rowan during the recess review with you details of the rights that you have in that regard.
>
> THE DEFENDANT: Yes, he fully explained everything to me.
>
> THE COURT: Okay. And based on your attorney's advice, has this election been made on that advice?
>
> THE DEFENDANT: Yes, it has.
>
> THE COURT: And is that election freely and voluntarily made?

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: Okay. Do you have any questions about that?

THE DEFENDANT: No, I sure don't.

THE COURT: Thank you. Go off at this time.

*Id.* at 149-50.

Despite assuring the trial court—after the close of evidence—that he was freely electing to forego his right to testify and had no questions about doing so, Petitioner claims his trial counsel had deceived him by advising "that this was just part of the procedure by the court but that he <u>would</u> be allowed to testify later in his defense." Doc. 1, at 40. As the OCCA concluded, Petitioner's "allegation that he believed he later would be allowed to testify in his defense is belied by the fact that he confirmed before Judge Jones that he was not going to testify *after* counsel had said the defense was resting and thus the evidentiary portion of the trial had ended." Doc. 15, Ex. 10, at 7 (emphasis added). Petitioner ignores the record. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner's claim that his trial counsel rendered ineffective assistance of counsel in connection with Petitioner's decision not to testify lacks merit. "If the omitted issue is without merit, appellate counsel's failure to raise it is not ineffective assistance of counsel." *Kidwell*, 480 F. App'x at 933. Petitioner fails to establish the OCCA unreasonably applied clearly established law as determined by the Supreme Court.

> **c.    Claim Five—failure to object to the prosecutor's reference to the fact that Petitioner did not testify.** Doc. 1, 39-40.

During closing statements to the jury, the prosecutor argued a statement Petitioner had made to the police was not credible:

> It didn't happen the way he said it did. Roger Kincaid committed this crime. Roger Kincaid did not testify in this trial, and the instructions tell you you cannot permit that to weigh in consideration during your deliberations. However, his credibility is on the line. He did make a statement to police on the morning of June 12, 2007, and I would submit to you, folks, there are several statements that he made during the course of that interview that are demonstrably false, demonstrably false.

TR Vol. V, at 39-40. Petitioner faults trial counsel for failing to object. Doc. 1, at 41-42, 43-44.

The state courts found no merit to this claim on post-conviction review. Doc. 15, Ex. 10, at 7 & Ex. 13, at 1-2, 7-8. The district court concluded "the prosecutor's argument that petitioner did not testify in the trial and the instructions tell the jury that the jury can't permit that to weigh in

consideration during their deliberations is not objectionable," and the OCCA found no error in the findings. *Id.*

"When evaluating comments bearing upon a defendant's failure to testify, [a court] looks to see if the language used was 'manifestly intended to be a comment on the defendant's failure to testify' or was of 'such character that the jury would naturally and necessarily take it to be such a comment.'" *United States v. Templeman*, 481 F.3d 1263, 1265 (10th Cir. 2007) (citation omitted). In this Court, Petitioner submits only that the statement was prejudicial and "the <u>weak</u> evidence against him in this case (which is probably why the D.A. made such comments in the 1st place) made such statements all the more prejudicial." Doc. 1, at 41.

Petitioner's claim that his trial counsel rendered ineffective assistance of counsel by failing to object to the prosecutor's statement lacks merit. The prosecutor's comment underscored Petitioner's right not to testify and "[s]uch admonitions are entirely proper . . . ." *United States v. Herron*, 371 F. App'x 913, 915 (10th Cir. 2010). The comment, as the state courts concluded, was not objectionable. "If the omitted issue is without merit, appellate counsel's failure to raise it is not ineffective assistance of counsel." *Kidwell*, 480 F. App'x at 933. Petitioner fails to establish the OCCA unreasonably applied clearly established law as determined by the Supreme Court.

### 3. Petitioner's Claim Three is procedurally barred.

Petitioner claimed on post-conviction that his trial counsel was ineffective by failing to introduce a television news interview with the neighbors of the decedent and victim as evidence at trial. Doc. 15, Ex. 7, at 8. The state district court found "a television interview" is "inadmissible hearsay" and determined the claim was "meritless as to a claim of ineffective assistance of appellate counsel." *Id.* Ex. 10, at 6. On appeal, the OCCA concluded Petitioner was claiming for the first time "that counsel was ineffective in not procuring the individuals in the news interview as witnesses for Petitioner's trial." *Id.* Ex 13, at 5. The OCCA elected to

> reject such an assignment of error, as this Court will not consider new allegations that have not first been presented to the District Court for resolution. *See* Rule 5.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2014) ("The appeal to this Court under the Post-Conviction Procedure Act constitutes an appeal from the issues raised, the record, and findings of fact and conclusions of law made in the District Court in non-capital cases.").

*Id.* (footnote omitted).

In this Court, Petitioner claims "[t]he newscast/interview were never introduced to the jury, nor were the neighbors ever called as witnesses in the case" and "[c]ounsel's ineffectiveness . . . adversely affected the trial outcome where this evidence would definitely had produced a 'reasonable doubt' as to Petitioner's guilt . . . ." Doc. 1, at 38. A habeas claim is generally subject to

procedural bar when the OCCA declines to consider a claim's merits based on a state procedural rule that is independent and adequate. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "'To be independent, the procedural ground must be based solely on state law.'" *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (citation omitted). "'To be adequate, the procedural ground must be strictly or regularly followed and applied evenhandedly to all similar claims.'" *Id.* (citation omitted). If the rule is independent and adequate, a petitioner must show either cause and prejudice, or a fundamental miscarriage of justice, to overcome the default. *See Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." *Id.* at 753. To show a fundamental miscarriage of justice, Petitioner must make a "'credible' showing of actual innocence." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). That is, he must "'support his allegations of constitutional error with new reliable evidence − whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence − that was not presented at trial.'" *Id.* at 1232 (citation omitted).

Petitioner does not challenge the independence or adequacy of the OCCA's procedural basis for barring review of this claim. Doc. 1, at 38-39.

Nor does he show cause and prejudice. *Id.* Instead, he claims "[s]aid ground of error is exactly the same as presented in the district court" and then noted "*except* that Petitioner point[ed] out the obvious prejudice in refusing/failing to obtain the t.v. interview/newscast, because possible witnesses were not deposed and called at trial, thus adversely affecting its outcome." *Id.* at 38 (emphasis added). As to any claimed fundamental miscarriage of justice, Petitioner states in an affidavit appended to his petition "[t]hat I am completely, 100% INNOCENT" but he fails to support this conclusion with *new* evidence showing his factual innocence. *Id.* at 49, 46-49. Petitioner's Claim Three is procedurally barred.

> **4.** **On de novo review of Petitioner's Claim Two, Petitioner was not deprived of the effective assistance of trial or appellate counsel based on trial counsel's failure to enlarge photographs of Petitioner's wounds.**

When Petitioner sought post-conviction relief from the state district court, he claimed his trial counsel was ineffective in failing to have photographs of Petitioner's wounds "'blown up' so that the jurors could see that the blood [on Petitioner] were wounds instead of blood splatters" as a nurse testified. Doc. 15, Ex. 7, at 8. The trial court found the issue "meritless as to a claim of ineffective assistance of appellate counsel" because "the issue of wounds to petitioner's body was litigated in the trial, with

defense counsel cross-examining Nurse Miller on the issue" and "[a] television monitor was used to publish photos admitted into evidence to the jury, including State's Exhibit No. 40 which defense counsel 'zoomed' in on during cross-examination of Nurse Miller." *Id.* Ex. 10, at 6.

On appeal, the OCCA considered Petitioner's supporting brief and concluded he "now claims that the photographs were needing to be enlarged for the jury, not only in the courtroom, but for the jury to take with them into deliberations" and that "[t]his argument on appeal is not the identical claim Petitioner made before the District Court." *Id.* Ex. 13, at 4. Citing Oklahoma procedural authority, *Armstrong v. State*, 811 P.2d 593, 599 (Okla. Crim. App. 1991), the OCCA concluded, "This Court will not address a claim on appeal made on grounds different from those raised below." *Id.*

The undersigned concludes the OCCA misread Petitioner's *consistent* claim that counsel was ineffective in not enlarging photographs of Petitioner's wounds, whether for the jury to view when further enlarged on a television monitor in the courtroom or during its deliberations. The undersigned, therefore, analyzes this claim de novo.

Petitioner maintains the size of the photographs of his wounds is "crucial to the case, in order to show that Petitioner's wounds were NOT merely cuts but were in fact stab wounds, just like the victim's." Doc. 1, at

37.[23]  The record reflects the state called Nurse Miller, the nurse who treated Petitioner's wounds, and showed her photographs of the injuries she had seen that night.  TR Vol. III, at 255-66.  When asked, "Did you see any wound anywhere on [Petitioner's] body that was consistent with his having been stabbed," she testified that she had not.  *Id.* at 264.  Trial counsel challenged her testimony on cross-examination by zooming in—with the television monitor—on a particular wound in State's Ex. 40 and asking her if she "th[ought] that might have been a stab wound perhaps, the puncture of a knife?"  *Id.* at 266.  She testified the wound "is not a stab wound."  *Id.* at 267.  Petitioner only speculates that *any* enlargement of the photographs of his wounds would have persuaded the jury to disregard this testimony by the nurse who examined Petitioner *and treated* the wounds in question.

---

[23]  In his supporting brief's "Statement of the Facts," Petitioner belies his own stab wound claim:

> At the hospital, Petitioner was also treated for cuts & abrasions. (Tr.III, 255-256; State's ex. 3-40).  These included an abrasion to his right cheek, an abrasion to his right middle finger, a laceration to his right thumb, a small abrasion to his right shoulder, a laceration to his right ankle, a small abrassion to his right heel, abrassions to his left knee, a small laceration to the knuckle area of his left middle finger, an abrasion to his left index finger, abrasions to the inside of his left hand & a scrape or avulsion on the skin at the base of his left thumb. (Tr.III, 256-265).

Doc. 3, at 8.

Trial counsel's failure to enlarge photographs of Petitioner's wounds was not deficient performance and it was not prejudicial to Petitioner's defense. Appellate counsel, therefore, was not ineffective in failing to raise the claim on direct appeal. *Kidwell*, 480 F. App'x at 933.

Petitioner is not entitled to federal habeas relief on his eighth and ninth grounds for relief. He failed to meet his burden of showing that the OCCA's determination was in conflict with, or an unreasonable application of, clearly established federal law.

## H.  Petitioner's Ground Seven:  cumulative error.

Petitioner asserts that "[e]ven if none of the previously discussed errors can, when viewed in isolation, necessitates reversal of Petitioner's convictions, the combined effect of these errors deprived him of a fundamentally fair trial & requires his convictions be reversed." Doc, 1, at 32.

"In the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis . . . undertake[n] only if there are at least two errors." *Fairchild v. Trammell,* 784 F.3d 702, 724 (10th Cir. 2015) (quoting *Lott v. Trammell,* 705 F.3d 1167, 1223 (10th Cir. 2013)).

61

The undersigned has concluded that Petitioner has demonstrated no constitutional error and, so, fails to "implicate cumulative-error analysis." *Lott,* 705 F.3d at 1223.

## IV. Petitioner's request for an evidentiary hearing.

Petitioner requests an evidentiary hearing on the ineffective assistance of counsel claims raised in his eighth and ninth grounds for habeas relief. Doc. 4. He filed a similar request in conjunction with his state post-conviction application. Doc. 15, Ex. 8. Presuming that Petitioner has diligently sought to develop the factual bases for his claims and assertions, those claims and assertions have been resolved on the record. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Furthermore, as Respondent submits, Doc. 15, at 3, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The undersigned recommends the court deny Petitioner's request for an evidentiary hearing. Doc. 4.

## V. Petitioner's requests to supplement the record.

Petitioner has filed two motions to supplement the habeas record. Doc. 24, 25. In the first, Petitioner claims, "The Original Initial Federal Habeas Corpus Petition raised the claim and fact of Prosecutorial Misconduct and Prosecution knowing Suppression of Exculpatory evidence[.]" Doc. 24, at 1. He submits forty-eight pages of documentation of discussions had in various forms between Petitioner's family members and Petitioner's trial and appellate counsel. *Id.* Att. 1

With his second motion, Petitioner submits an August 28, 2015 affidavit by his brother, Pat Kincaid,[24] "as evidence in petitioner's Federal Habeas Corpus Proceeding." Doc. 25, at 1. He "moves the Court allow supplementation of said Sworn Affidavit . . . pursuant to 28 U.S.C. Rule 15(c) and Rule 6 and 7 Expansion of the record. Rules governing 2254 Habeas Corpus Cases[.]" *Id.* Respondent objected, noting, in part, that while Petitioner cited Fed. R. Civ. P. 15(c), "[b]ecause Petitioner is attempting to supplement the record with the affidavit and not amend his original pleading, Respondent assumes that Petitioner actually intended to reference Fed.R.Civ.P. 15(d) and responds accordingly." Doc. 26, at 2 n.3. Petitioner replied that he "is Supplementing his Original Federal Habeas Corpus

---

[24] *See* Doc. 24, Att. 1, at 13.

x

Petition" with his brother's affidavit "as a material witness to facts alleged in the Habeas Petition. Rules 6 & 7, governing §2254 Cases, 28 U.S.C." Doc. 27, at 1.

Petitioner inaptly relies on Rule 6, Rules Governing § 2254 Cases, to support his motion to supplement the record. That rule pertains to discovery. Rule 7 does permit a federal district court to "direct the parties to expand the record by submitting additional materials relating to the petition." Rule 7(a), Rules Governing § 2254 cases. But, once again, "*Cullen* [*v. Pinholster*, 563 U.S. at 181] stands for the proposition that the district court can only examine "the record in existence at [the] time [the state-court decision was made]—i.e., the record before the state court." *Champ v. Zavaras*, 431 F. App'x 641, 655 (10th Cir. 2011). Petitioner's "requests to expand the record and to hold an evidentiary hearing to further develop the record aim to place new evidence before the federal court that was not a part of the state-court record. Under *Cullen*, this is no longer permitted." *Id.*

The undersigned recommends the court deny Petitioner's requests, Docs. 24, 25, to supplement the record.

## VI.    Recommendation and notice of right to object.

For the stated reasons, the undersigned recommends the denial of the petition, Doc. 1, Petitioner's request for an evidentiary hearing, Doc. 4, and his motions to supplement the record, Docs. 24, 25.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before October 4, 2016, under 28 U.S.C. § 636(b)(l) and Fed. R. Civ. P. 72(b)(2).  The undersigned further advises that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of  both factual and legal issues contained herein. *Moore v. United States,* 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

ENTERED this 14th day of September, 2016.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE